U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 APR 24 PM 12: 59

CLERK

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DARYL B., )
)
   Plaintiff, )
)
v. ) Case No. 5:17-cv-210
)
COMMISSIONER OF SOCIAL )
SECURITY, )
)
   Defendant. )

## OPINION AND ORDER
**(Docs. 12, 17 )**

Plaintiff Daryl B. brings this action under 42 U.S.C. § 405(g), requesting reversal of the decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB). (Doc. 3.) Currently pending is Plaintiff's motion to reverse the decision of the Commissioner (Doc. 12) and the Commissioner's motion to affirm (Doc. 17). For the reasons stated below, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

### Background

Plaintiff was 42 years old on his alleged disability onset date of January 20, 2008. (AR 13, 23.) He suffered from a work injury leading to degenerative disc disease of the lumbar spine, three surgeries, and a post-operative infection. (AR 15.) As a result, Plaintiff claims he cannot work. (*Id.*)

Plaintiff has an 11th grade education. (AR 193–94.) He previously worked as a lead technician for Cabot Hosiery Mills, maintaining machines and programming. (AR 197.) Most recently, he worked as a Robot Operator for Green Mountain Coffee Roasters, sealing and lifting cartons of coffee. (AR 195.) Around January 2008, while working at Green Mountain Coffee

Roasters, Plaintiff attempted to lift a heavy pallet and felt "a pain shoot right down [his] right leg." (AR 15, 196.) He stopped working full time after January 20, 2008 due to his work injury. (AR 15.)

At his May 5, 2016 hearing, Plaintiff testified that the pain in his back, buttocks and legs is so severe he cannot work. (AR 199.) Plaintiff sought medical advice for his pain. (AR 201.) He underwent three procedures in an attempt to reduce his pain. (AR 201–05.) On April 8, 2009, Plaintiff underwent a bilateral L5 pars defects repair. (AR 75.) Plaintiff alleges he felt worse after the procedure on April 8, 2009. (AR 201–02.) After a receiving a second opinion, Plaintiff underwent a spinal fusion on December 6, 2010. (AR 17, 202.) Plaintiff testified the "first fusion turned out great." (AR 202.) At that time, he stated he was able to get up and walk around the block "two or three times a day for about four months." (*Id.*)

After Plaintiff noted feeling less pain, William Schick, a Senior Vocational Rehabilitation Counselor, suggested Plaintiff undergo a Functional Capacity Evaluation. (AR 92.) Plaintiff did so but he injured himself during the evaluation while attempting to perform one of the exercises. (AR 203.) Plaintiff believes something in his back popped, and he began experiencing nausea, profuse sweating, and diarrhea. (*Id.*) Soon after, Plaintiff returned to the doctor, who performed medical imagining and informed Plaintiff that he would need to undergo a second spinal fusion. (AR 203–04.)

On April 12, 2012, Plaintiff underwent a second spinal fusion, a revision of his first spinal fusion. (AR 103, 204.) He developed a post-operative infection following the April 12th surgery. (AR 207.) He testified that the second surgery "never seemed to give [him] the relief [he] got from the first one" and maintains he is "still in a lot of pain." (AR 204.)

Plaintiff testified that his pain is worse now than when he first injured himself in 2008. (AR 205.) He reports he can stand and do dishes for "maybe 5 to 10 minutes" and can sit for "anywhere from 20 to 30/40 minutes." (AR 200.) But he has trouble balancing, and uses a cane, a walker, and surrounding walls to help him walk. (AR 198–201.) Plaintiff testified that he has "a hard time walking very far" and if he does walk too far, his back will suddenly hurt so much that he believes he will fall if he does not sit down. (AR 201.) He also testified that he did not believe he can work unless he could be "reclined in a chair doing a job." (AR 206.)

Plaintiff testified that he takes methadone, oxycodone, and Tylenol to reduce his pain but suffers from a variety of drug-related side effects that, in addition to his pain, limit his ability to work. (AR 199.) Plaintiff reports that the pain medication makes him "groggy," and that he has a difficult time with life activities because he often cannot sleep for more than two hours at a time. (AR 198–99.)

Plaintiff filed a Title II application for a period of disability and DIB on June 23, 2014. (AR 13.) The claim was denied on September 12, 2014 and upon reconsideration on November 21, 2014. (*Id.*) Plaintiff requested a hearing on January 20, 2015. (*Id.*) Administrative Law Judge (ALJ) Dory Sutker held a video hearing on May 5, 2016. (*Id.*) Medical Expert (ME) Louis Fuchs and Vocational Expert (VE) Richard Hall also testified. (*Id.*) ALJ Sutker issued an unfavorable decision on June 2, 2016. (AR 10–29.) The Appeals Council denied Plaintiff's request for review (AR 1–7), and he appealed to this court on October 24, 2017 (Doc. 1).

## **ALJ Decision**

Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in

substantial gainful activity." *Id.* Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment or combination of impairments." *Id.* Third, if the claimant suffers from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." *Id.* Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proving his case at steps one through four. *McIntyre*, 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Employing that sequential analysis in her June 2, 2016 decision, ALJ Sutker first determined Plaintiff has not engaged in substantial gainful activity during the period of January 20, 2008, his alleged onset date, through June 30, 2013, his last date insured. (AR 15.) At step two, the ALJ found Plaintiff has three severe impairments: degenerative disc disease of the lumbar spine, status post three surgeries, and a post-operative infection. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meets or medically equals a listed impairment. (AR 16.)

Next, the ALJ determined Plaintiff has the residual functional capacity (RFC) to

4

perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[1] with the following exceptions:

> [He] needs the ability to change positions between sitting and standing at will. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and can never crawl or climb ladders, ropes or scaffolds. The claimant can have no exposure to unprotected heights, moving machinery, or vibrations such as hand-held power tools; and can do no driving on the job. He can have occasional exposure to extreme temperatures, humidity and wetness. He can perform uncomplicated tasks (typically learned in 30 days or less), and can maintain concentration, persistence and pace for two-hour blocks of time.

(AR 16.) At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (AR 22.)

At step five, the ALJ followed the Medical-Vocational Guidelines (the "Grid Rules") contained in 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ found that on the date last insured the Plaintiff was 47 years old and classified Plaintiff as "a younger individual." (AR 23.) Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs in significant numbers in the national economy that Plaintiff could perform, including monitor, addresser, and document preparer. (*Id.*) The ALJ accordingly concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 20, 2008 through June 30, 2013. (*Id.*)

## Standard of Review

The Social Security Act defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] The regulation includes the following definition of sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "'a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also* 42 U.S.C. § 405(g). Substantial evidence is 'more than a mere scintilla.' "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* No. 17-1184, 2019 WL 1428885 (S. Ct. Apr. 1, 2019); *see also Poupore*, 566 F.3d at 305 (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff raises three arguments on appeal. All three concern the ALJ's determination that he can maintain concentration for two hours at a time. First, he claims the ALJ improperly weighted the opinions of the treating and examining doctors, resulting in an RFC unsupported by substantial evidence. (Doc. 12 at 1–8.) Second, Plaintiff contends the ALJ did not adequately account for the limiting effects of his chronic pain and impermissibly interpreted raw medical data, requiring remand. (*Id.* at 8–13.) Third, Plaintiff asserts the ALJ relied on flawed VE testimony. (*Id.* at 13–14.)[2] The Commissioner maintains that the ALJ's decision is supported by substantial evidence and complies with applicable legal standards. (Doc. 17 at 1.)

### I. Non-Exertional Limitations

The court begins by reviewing the ALJ's assessment of Plaintiff's non-exertional limitations. When determining Plaintiff's RFC, the ALJ concluded that Plaintiff could perform uncomplicated tasks and maintain concentration, persistence, and pace for two-hour blocks of time. (AR 16.)

Plaintiff claims the ALJ did not adequately account for non-exertional limitations caused by his pain and pain medication and impermissibly interpreted raw medical data when determining his RFC. (Doc. 12 at 8.) Specifically, Plaintiff contends that the medical opinion evidence of record does not support the ALJ's conclusion that Plaintiff could perform uncomplicated tasks and maintain concentration, persistence, and pace for two-hour blocks of

---

[2] In his response, to Defendant's motion to affirm, Plaintiff makes two additional arguments: (1) the Appeals Council erred by failing to consider new and material evidence; and (2) the ALJ erred by failing to consider a closed period. However, "arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in [a lower court] or raised them in a reply brief." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A.*, 412 F.3d 418, 428 (2d Cir. 2005). Additionally, the court finds there is other error requiring remand. The court therefore declines to consider these arguments.

time. (*Id.* at 9–10.) He argues that there is no opinion evidence in the record suggesting these limitations sufficiently account for the effects of Plaintiff's pain and his use of pain medication. (*Id.* at 9–10.)

Plaintiff claims the State non-examining consultants only considered his physical impairments, not his mental residual functional capacity. (*Id.*) Plaintiff claims the ALJ only discussed the raw medical data found in the record, which is not an acceptable basis for an RFC finding. (*Id.* at 12.) Plaintiff recognizes his treating physicians did not quantify the degree his attention and concentration were diminished but argues the ALJ breached her duty to develop the record on this issue. (*Id.*) Plaintiff asserts that his attention and concentration limitations are likely case-determinative because the VE testified that a person who was regularly off-task for ten percent of the day would be precluded from all work. (*Id.* at 13.) In response, the Commissioner claims the RFC is supported by substantial evidence and that Plaintiff failed to carry his burden to show greater limitations. (Doc. 17 at 13.)

The court finds a remand is necessary for two reasons. First, the ALJ had a duty to explain the reasoning for her findings and failed to do so. Second, the ALJ committed a legal error when she substituted her own opinion for that of a physician. The court will address each in turn.

### A.    The ALJ Failed to Properly Explain Her Findings

The RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184, at *3 (July 2, 1996). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical

8

and other evidence." *Id.* at *7. While "an explicit function-by-function analysis" is not required, the RFC determination must "afford[] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous . . . ." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

"Although the ALJ is required to discuss every complaint raised by the claimant in the medical record, [s]he must specifically address limitations or conditions for which there is substantial record evidence." *Ellis v. Colvin*, 29 F. Supp. 3d 288, 300–02 (W.D.N.Y. 2014). Then, the ALJ has an obligation to "to adequately explain h[er] reasoning in making the findings on which h[er] ultimate decision rests, and in doing so [she] must address all pertinent evidence." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (summary order) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)). On one hand, an ALJ "need not recite every piece of evidence that contributed to the decision so long as the record 'permits us to glean the rationale of an ALJ's decision.'" *Frank G. v. Comm'r of Soc. Sec.*, No. 5:17-cv-103, 2019 WL 430887, at *5 (D. Vt. Feb. 4, 2019) (quoting *Cichocki v. Astrue*, 729 F. 3d 172, 178 n.3 (2d Cir. 2013)). On the other hand, a remand may be appropriate when the court is unable to discern the ALJ's rationale. *See Mason v. Barnhart*, 96 F. App'x 30, 31–32 (2d Cir. 2004) (summary order) (remanding when the ALJ failed to address substantial record evidence and the court is unable to discern ALJ's rationale).

Here, there is substantial evidence in the record suggesting Plaintiff had significant mental concentration limitations. The ME testified that pain would "certainly" impact the

9

Plaintiff's abilities and would impact the Plaintiff's ability to concentrate and perform at a competitive pace. (AR 220.) Further, the ME said, "clearly I can say pain can [a]ffect someone's performance, yes." (AR 221.) Plaintiff's physician, Dr. Brock, also indicated that the Plaintiff's cognition, attention and concentration were impaired due to the use of high dose opioids. (AR 887.) Further, Plaintiff testified that the pain medication made him "groggy" and that he had difficulty staying awake throughout the day and while driving. (AR 198–99.) Finally, various sources throughout the record reference Plaintiff's difficulties concentrating, staying awake and feeling "drugged," "drowsy," and "fuzzy." (AR 1058, 1062, 1067, 1077, 1104, 1107–08.)

The ALJ concluded the Plaintiff could "maintain concentration, persistence and pace for two-hour blocks of time." (AR 16.) The ALJ had an obligation to explain her reasoning for such a finding and failed to do so. The record does not contain clear evidence regarding the duration and severity of Plaintiff's concentration, persistence and pace limitations. Despite this, the ALJ failed to ask the Plaintiff or his treating physician for clarification regarding his concentration, persistence and pace limitations. The ALJ noted that Dr. Brock simply filled out a checklist with a few additional comments. (AR 22.) But, such an absence of clarity should have prompted the ALJ to request clarification from Dr. Brock. *See Scott v. Astrue,* 2010 WL 2736879 at * 15 (E.D.N.Y. July 9, 2010) (holding the ALJ had an obligation to resolve any ambiguities in the record and request clarification from treating physician when the medical opinion was ambiguous because of various checked boxes.) The ALJ had an opportunity to resolve the ambiguity in the record and failed to do so. Thus, the court cannot determine the ALJ's reasons for such a finding.

The court recognizes the ALJ offered rationales for other aspects of the RFC findings. Yet none of the rationales provided by the ALJ address her conclusion that the Plaintiff can

maintain concentration, persistence and pace for two-hour periods of time. For instance, the ALJ indicated the "limitation to uncomplicated tasks is supported by the claimant's use of opioid pain medication and opinions of Dr. Davignon and Dr. Brock." (AR 22.) The ALJ may have intended this statement to provide support for the entire final sentence of the RFC which would include the concentration, persistence and pace limitations. But, if the ALJ had intended this statement to provide support for the entire final sentence of the RFC, it is unlikely that she would have only included the language "[t]he limitation to uncomplicated tasks is supported by . . . ." Instead, the ALJ would have likely included a broader statement indicating the non-exertional limitations were all supported by Plaintiff's use of opioid pain medication and opinions of Dr. Davignon and Dr. Brock.

Even if the ALJ had intended the claimant's use of opioid pain medication to support the final sentence of her RFC, such a conclusion does not consider whether the side effects of the high dose opioids interfere with Plaintiff's ability to concentrate, persist and maintain pace. Additionally, such a conclusion does not consider whether Plaintiff's pain interferes with his ability to concentrate, persist and maintain pace. As such, simply including the use of opioid pain medication as support for the limitation of uncomplicated tasks does not overcome the ALJ's failure to indicate her reasons for finding the Plaintiff could maintain concentration, persistence and pace for two-hour periods of time. Greater specificity is required. *Pounds v. Astrue*, 772 F. Supp. 2d 713, 733 (W.D. Pa. 2011) (internal citations omitted.)

The Commissioner contends that the ALJ's decision is supported by the fact that Plaintiff did not obtain specialized mental health treatment and his few mental status evaluations in the record are unremarkable. (Doc. 17 at 13.) But this is a post-hoc rationale for the ALJ's conclusion since the ALJ never offered that rationale for her decision and in fact never

mentioned Plaintiff's failure to obtain mental health treatment. And "[i]t is well settled that the court may not affirm an administrative action on grounds different from those considered by the agency." *Sanville v. Comm'r of Soc. Sec.*, No. 2:16-cv-251, 2017 WL 4174783, at *8 (D. Vt. Sept. 20, 2017); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 89 (2d Cir. 2015) (per curiam) ("Neither the ALJ nor the Appeals Council analyzed the substance of Dr. Holder's opinion, and we may not 'affirm an administrative action on grounds different from those considered by the agency.'" (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008))). Thus, the court cannot accept the Commissioner's post-hoc rationale.

In sum, because the court is unable to identify evidence supporting the ALJ's ruling that Plaintiff can maintain concentration, persistence and pace for two-hour periods of time, a remand is appropriate.

### B. The ALJ Failed to Develop the Record and Improperly Substituted her Own Opinion for that of a Physician

An ALJ has the obligation to gather necessary medical records and obtain a proper assessment of the claimant's RFC. *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). "The ALJ cannot rely on the absence of evidence, and is thus under an affirmative duty to fill any gaps in the record." *Rosado v. Barnhart*, 290 F. Supp. 2d 431, 440 (S.D.N.Y. 2003). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Brown v. Comm'r of Soc. Sec.*, 709 F. Supp. 2d 248, 256 (S.D.N.Y. 2010).

Here, the ALJ made the RFC determination in the absence of a supporting expert medical opinion. "Because an RFC determination is a medical determination, an ALJ who makes an RFC

determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf*, 724 F. Supp. 2d at 347. "It is well-settled that an ALJ may not 'play doctor' by 'substitut[ing] his own judgment for competent medical opinion.'" *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quoting *Staggers v. Colvin*, No. 3:14CV00717(SALM), 2015 WL 4751108, at *3 (D. Conn. June 17, 2015)). "[W]here the medical findings in the record merely diagnose the claimant's [non]exertional impairments and do not relate these diagnoses to specific residual functional capacities . . . the Commissioner may not make the connection himself." *Id.*

While the record indicates Plaintiff has concentration limitations, it does not reflect the extent of these limitations and their impact on his ability to work. "[W]here the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's [functional] limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 128 (W.D.N.Y. 2018) (internal citations omitted.) Here, the ALJ did just that. Various sources throughout the record reference Plaintiff's impairments and symptoms such as difficulty staying awake and feeling "drugged," "drowsy" and "fuzzy." (AR 1058, 1062, 1067, 1077, 1104, 1107–08.) But the record does not shed light on the extent of those impairments. The court is unable to find any medical opinion or testimony indicating the extent of Plaintiff's concentration, persistence and pace limitations.

The ME testified that pain would <u>certainly</u> impact the Plaintiff's ability to concentrate and perform at a competitive pace. Yet the ME did not indicate to what extent this pain would impair the Plaintiff's function. (AR 220.) The ME opined, "clearly I can say pain can [a]ffect

13

someone's performance, yes." (*Id.*) But again, the ME did not indicate to what extent pain would impair Plaintiff's function. Plaintiff's physician, Dr. Brock, also indicated Plaintiff's cognition, attention and concentration was impaired due to the use of high dose opioids.[3] (AR 887.) While Dr. Brock diagnosed Plaintiff with concentration impairments, he did not relate those diagnoses to specific residual functional capacities. (*Id.*) Thus, the record indicates the Plaintiff has concentration limitations but there is a lack of medical opinion regarding the extent of the Plaintiff's limitations.

Additionally, the ALJ did not question the Plaintiff about his ability to concentrate, maintain persistence or pace. The ALJ asked the Plaintiff about his educational background, past employment, his injury, and if he believed he could still work. (AR 192–98.) But the ALJ did not ask Plaintiff about his ability to concentrate. Still, the ALJ concluded that Plaintiff can "maintain concentration persistence and pace for two-hour blocks of time." (AR 16.) As such, there is a gap in the record regarding Plaintiff's ability to maintain concentration, persistence and pace.

The ALJ had the duty to develop the record, and fill any gaps in the record. *Rosado*, 290 F. Supp. 2d at 440. Here, despite the gap in the record, the ALJ concluded Plaintiff could "maintain concentration, persistence and pace for two-hour periods of time." (AR 16.) The ALJ did not specifically inquire about Plaintiff's concentration, persistence and pace limitations. Granted, the ALJ did pose a hypothetical about a claimant with reduced concentration, persistence and pace. Yet the ALJ did not address the Plaintiff's specific limitations.

---

[3] The court recognizes the medical source statement containing this note was created on August 12, 2014—after the Plaintiff's date last insured. Although, the record reflects the Plaintiff was taking similar, if not the same, dose of opioids during the claimed period of disability which Dr. Brock indicates would impact Plaintiff's cognition. (AR 1058, 1061–62, 1065, 1068–70, 1072, 1081, 1083–84, 1096, 1098, 1100, 1128, 1131, 1146, 1151, 1180–81, 1197, 1265.)

14

Further, it is unclear to the court whether the ALJ believed this hypothetical claimant reflected Plaintiff's concentration, persistence and pace limitations. The ALJ never inquired about Plaintiff's specific concentration, persistence or pace limitations so it is difficult to ascertain what Plaintiff's limitations are and if they match the hypothetical presented to the VE. Additionally, the medical opinions in the record do not address to what extent or degree Plaintiff's concentration, persistence and pace are limited which again makes it difficult to ascertain Plaintiff's limitations. And if the ALJ believed the hypothetical she presented to the VE encompassed Plaintiff's limitations, it is unclear which medical opinions she relied on. Most importantly, if the ALJ intended the hypothetical to encompass Plaintiff's concentration, persistence and pace limitations the ALJ would have likely discussed and considered the VE's answer when forming her conclusion. As such, it remains unclear what the Plaintiff's concentration, persistence and pace limitations are. The gap in the record remains. As a result, the ALJ relied on the absence of evidence, and substituted her own opinion for that of a physician.

The court recognizes that the "ALJ's opinion need 'not perfectly correspond with any of the opinions of medical sources cited in his decision.'" *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 587 (W.D.N.Y. 2018). Here, however, the issue is not that the ALJ's opinion did not "perfectly correspond" with opinions of medical sources cited in the decision but rather the lack of medical source opinions cited regarding Plaintiff's specific concentration, persistence and pace limitations. The ALJ "must supplement the record through [her] own initiatives when the record is incomplete or inadequate." While that burden "does not attach when the record is ample" here the record was inadequate. Plaintiff's concentration, persistence and pace limitations are vital to

the ALJ's ultimate findings. Thus, the ALJ had a duty to fill the gap in the record. As such, remand is necessary for further development of the record.

### C. ALJ's Failure to Properly Address Plaintiff's Concentration, Persistence and Pace Limitations is not a Harmless Error

Generally, "courts have held that ALJ error which does not negate the validity of the ALJ's ultimate conclusion is harmless and thus does not warrant reversal . . . ." *Fitzgerald v. Astrue*, No. 2:08-CV-170, 2009 WL 4571762 at *8 (D. Vt. Nov. 30, 2009) (internal citations omitted). The Second Circuit has instructed as follows: "[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Id.* (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

The ALJ's failure to properly address Plaintiff's limitations in concentration, persistence, and pace was not a harmless error because such a limitation is directly relevant to the ALJ's RFC determination. The VE testified that an individual with concentration, persistence, and pace 15–20% below the norm would be precluded from substantial gainful activity. (AR 226.) Additionally, the VE indicated "generally speaking if the worker was off task for any reason greater than 10 percent of the workday on an ongoing basis it would erode the vocational base and there'd be no work for such a person." (*Id.*) Such a limitation would significantly limit Plaintiff's range of work and could ultimately deprive him of all meaningful employment. *See Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) ("A nonexertional impairment 'significantly limit[s]' a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." (alteration in original.)) Thus, for the ALJ to accurately determine if Plaintiff is precluded from all work, it was necessary for the ALJ

to determine with specificity the severity of and shortcomings in Plaintiff's concentration, persistence and pace.

## II. Remaining Issues

Because the court has identified an error requiring remand, the court does not reach Plaintiff's other arguments. Although the court is not addressing Plaintiff's remaining arguments, the ALJ may reconsider those issues on remand, and should consider whether the evidence of record regarding Plaintiff's limited ability to move his lumbar spine warrants including additional non-exertional limitations in the RFC assessment. "In analyzing the record on remand, the ALJ remains free . . . to develop the administrative record to the extent necessary to make this and any other determinations on the extent and causes of [Plaintiff's] symptoms." *Padula v. Astrue*, 514 F. App'x 49, 51 (2d Cir. 2013) (summary order) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

## Conclusion

Plaintiff's motion to reverse the Commissioner's decision (Doc. 12) is GRANTED, and the Commissioner's motion to affirm the Commissioner's decision (Doc. 17) is DENIED. The case is REMANDED for further proceedings and a new decision.

Dated at Rutland, in the District of Vermont, this 24 day of April, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court